## M. J. CHEATHAM *v.* THE STATE.

| 67 | 335 |
| 68 | 420 |

| 67 | 335 |
| 71 | 886 |

| 67 | 335 |
| 72 | 992 |

| 67 | 335 |
| 73 | 586 |

| 67 | 335 |
| 75 | 614 |

| 67 | 335 |
| 79 | 718 |

1. CRIMINAL PROCEDURE. *Change of venue; refusal assigned for error. Supreme
   court. Review of whole case.*
   In reviewing the action of the circuit court in refusing defendant's applica-
   tion for a change of venue, where a motion for a new trial has been over-
   ruled, and the whole evidence is in the record, this court will not look
   alone to the evidence before the court on the application for the change
   of venue, but will judge from the whole case, whether an impartial trial
   was had.

2. JURY. *Presumed to obey instructions.*
   Until the contrary appears, it must be presumed that a jury honestly per-
   forms its duty, and ignores such incompetent evidence or improper re-
   marks inadvertently made by counsel as they are instructed by the court
   to disregard.

3. SAME. *Improper comments by counsel. Withdrawal thereof.*
   Accordingly, where counsel for the state in his argument before the jury
   commented on circumstances adverse to the defendant, but not in evi-
   dence, and, upon immediate objection by defendant's counsel withdrew
   the remarks as being inadvertently made, and asked the jury to ignore
   them, and the court instructs the jury to disregard them, a verdict of
   conviction will not for that reason be set aside and a new trial awarded.

4. WITNESS. *Evidence to discredit. When incompetent.*
   Where no foundation has been laid in the examination of the witness him-
   self for evidence attacking his credibility, evidence of facts calculated to
   discredit him is incompetent, unless the facts are such as, of and by
   themselves, to throw discredit on his testimony, as that he had accepted
   a bribe, or is of generally bad reputation for truth and veracity, etc.

5. EVIDENCE. *Mere offer to bribe witness.*
   Mere offers of a bribe or other inducement to testify, not accepted by the
   witness, are incompetent as evidence to discredit him.

6. TESTIMONY OF ACCOMPLICE. *Instruction. Judicial discretion.*

 A conviction of murder resting in part on the testimony of accomplices of the defendant will not be set aside merely because of the court's refusal to instruct or advise the jury to view such testimony with suspicion and not to convict without corroborating evidence. The practice of giving such instructions, though very general, rests in the discretion of the presiding judge, and his refusal to do so is not assignable for error.

7. INSTRUCTION. *Invading field of argument. Practice condemned.*

 An instruction for the state which calls attention to particular parts of the evidence and tells the jury it may consider them with all the evidence in the case is subject to criticism, as too nearly invading the field of argument, but is not so erroneous as of itself to cause a reversal.

FROM the circuit court of Grenada county.

HON. C. H. CAMPBELL, Judge.

The facts sufficiently appear in the opinion.

*Wm. C. McLean,* for appellant.

1. It was error to refuse the application for a change of venue. The affidavit of the defendant, supported by the oath of three credible witnesses, made a *prima facie* case, and to support this several witnesses were introduced and testified in the most unequivocal manner that a fair and impartial trial could not be had. Eleven witnesses thus testified, while ten swore that a fair trial could be had, in their opinion. The defendant was entitled at every stage of the case to the benefit of all reasonable doubts, and, if we look alone to the evidence for the state, the record shows that the application should have been granted.

2. The conviction should be set aside because of the action of prosecuting counsel in commenting before the jury upon the fact that Lamons, who had been jointly indicted with appellant, sought safety in flight. There was no evidence of such flight, and if there had been it would have been inadmissible against this defendant. No act, declaration, or confession of an accomplice after the commission of the crime is admissible against the co-conspirator. Wharton on Ev., § 699; *Browning* v. *The State,* 30 Miss. 671.

It is the experience of every lawyer that a fact once before the jury, no matter how it gets there, whether by legal evidence or statement of counsel, is certain to take effect. No ruling of the

court can remove the impression. It is high time that this court was putting a stop to the unjust and evil practice of prosecuting counsel making improper statements to the jury, and this can only be done by reversing all cases where counsel have been guilty of such practice. On this subject, see *Martin* v. *The State*, 63 Miss. 535; *Lamar* v. *The State*, 65 Ib. 93; *Lamar* v. *The State*, 64 Ib. 428; *Hubbard* v. *The State*, MSS.; 1 Thompson on Trials, §§ 966–972; *McDonald* v. *The People*, 9 Am. St. Rep. 559, note. The fact that counsel said to the jury that he would withdraw his remarks did not cure the error. *Baker* v. *Madison*, 62 Wis. 137; *Brown* v. *Swineford*, 44 Ib. 282; *Wolfe* v. *Minnis*, 74 Ala. 386.

3. It was error to refuse the evidence offered to prove that inducements were offered and extended to Lee Ervin and Cornelius Robinson in order to get them to testify in the case, and that members of the coroner's jury said to them, "we have the dead thing on you, it will be better for you to tell the truth about the matter, and if you tell all you know about it you shall not be hurt, but we will protect you and furnish you money to leave the country when the trial is over." The court erred in assuming that a foundation must first be laid, and in regarding these witnesses as any other witnesses. A foundation need not be laid, except when the proffered evidence is collateral to the issue. Here the proffered evidence was an independent fact to be proved like any other fact. See Rapalje, Law of Witnesses, § 202, and cases cited; Wharton Cr. Ev., § 566; *Day* v. *Stickney*, 14 Allen, 255; *Ford* v. *Ford*, 104 Mass. 206; *Rex* v. *Lord Stafford*, 7 How. St. Trials, 400; 1 Greenl. Ev., § 423.

4. While this court has in one or two cases sustained convictions upon the evidence of an accomplice, and has ruled that it is not error to refuse to "instruct" the jury not to convict on the uncorroborated evidence of an accomplice, yet the question in this case is different. Upon an examination of the authorities it will be seen that the court erred in refusing the charge as modified. Wharton Cr. Ev., § 441; Greenl. Ev., § 380; Taylor, Ev., 796; *Ray* v. *The State*, 48 Am. Dec. 379, 386, and note; *State* v. *Chyo Chiagk*, 4 S. W. Rep. 704. While some courts hold that it is the duty

of the trial judges to so advise the jury, yet they are not compelled to do so, and for their refusal no error can be assigned. We submit that such a doctrine is not a practical one and should not be adopted in any state. The rule should be uniform, and the only way to secure this is to require that such instructions be granted. See *Jones* v. *The State*, 65 Miss. 183 ; *White* v. *The State*, 52 Ib. 216.

5. It was plainly erroneous to instruct the jury for the state that if they "believe that defendant, before the killing, threatened to either kill him or have it done, they may consider such threats along with all the other evidence in the case." This was a charge on the weight of evidence and in direct contravention of legislative direction. Code 1880, § 1740. The test is whether the facts are presumptions of law or of fact. The presumptions from "motives to kill" and from "threats" are presumptions of fact, not of law. Wharton Cr. Ev., § 756 ; Thompson on Trials, § 2290.

Besides, it was clearly improper to call especial attention to particular facts. The court should not emphasize any part of the state's evidence. *French* v. *Sale*, 63 Miss. 387 ; *Ladner* v. *Ladner*, 64 Ib. 368 ; *May & Vaught* v. *Taylor*, 62 Ib. 500 ; Sackett, Instructions to Juries, §§ 11, 12 ; Proffat, Jury Trials, §§ 319, 320, 323, 336.

I submit a new trial should be awarded, and a change of venue granted.

Argued orally by *Wm. C. McLean*, for appellee, and *T. M. Miller*, attorney-general, for the state.

COOPER, J., delivered the opinion of the court.

Appellant has been convicted of the murder of one Tillman and sentenced to capital punishment. We dispose of the errors assigned in their order.

The first assignment of error is upon the action of the court in refusing a change of venue, and upon this it is sufficient to say that no abuse of judicial discretion appears to have been committed. Upon the motion for the change of venue a number of witnesses were examined, the majority testifying that in their opinion a fair and impartial trial could not be secured in the county. But a

number of them declared that no reason existed known to them why an impartial jury might not be secured. Looking to the whole evidence upon this question, it seems to us that many of the witnesses believed a jury could not be secured from that section of the county in which the homicide occurred, and not knowing the public sentiment in other portions of the county, assumed it to be hostile to the defendant, as it was in the section in which they were acquainted. But the question of error or no error in this respect is not determinable alone from the standpoint occupied by the court in passing upon the question before the trial was commenced. On the motion for a new trial the court had before it the whole case as developed, including the examination of the jurors on their *voir dire*, the selection of the panel, the temper and conduct of the jurors and witnesses, and the evidence of the existence or non-existence of that pervading public sentiment known as *undue prejudice in the public mind*, which, existing, entitles one accused of crime to a trial in another county. The record discloses that a venire of fifty names was drawn at the instance of the prisoner, and by the bill of exceptions it is certified that, " a jury, twelve lawful men, to wit, Charles Trimble and eleven others, taken from the special venire, the defendant not having exhausted his peremptory challenges," was selected.

The witnesses summoned in defendant's behalf seem to have promptly responded to the processes of the court, and, so far as we can discover, testified fully, freely and without any sort of hesitancy or reserve, in his favor. One witness for the state, having testified to a conversation he claimed to have overheard between the defendant and one of his co-defendants, in effect confessing his guilt, was promptly contradicted by the testimony of the only other man who he stated was present and within hearing. A great number of witnesses, apparently taken from the body of the community in which the homicide occurred, freely attacked the general credibility of the most important witnesses for the state. However honestly the witnesses on the preliminary motion for change of venue may have felt that the accused could not secure an impartial trial in the county of the offense, the trial as surveyed from its

conclusion instead of its commencement, impresses us, as it did the court below, as being entirely free from any bias against appellant.

The next assignment of error is upon certain remarks made by counsel aiding the district-attorney, in the course of his argument to the jury.   One of the witnesses for the state stated in reply to a question from the defendant's counsel, that some time after the arrest of appellant he (witness) told him (appellant) that Lamons (a defendant jointly indicted with appellant) was gone, and was not at home. It appears that when appellant was informed that suspicion rested upon Lamons, he replied that Lamons could not have committed the murder, for he had slept with appellant the night of the murder.   After this, and when appellant was arrested, he stated that he had spent the night of the murder with his mistress (a Miss Robinson).   In his argument the counsel for the state in speaking of these contradictory declarations by defendant as to where he had spent the night, said: "The reason why defendant changed his tactics was because he had intellect enough to know that the flight of Lamons was a circumstance of guilt and evidence of it, and that neither Cheatham nor Lamons could explain it."   Instantly upon this remark being made to the jury, counsel for appellant objected to it because there was no evidence of the flight of Lamons and that such evidence if offered would be incompetent as against the appellant.   Whereupon the court instructed the jury that it should disregard so much of the argument of counsel as had reference to the flight of Lamons, and counsel for the state also stated to the jury that he had inadvertently made the point, that he withdrew his remarks and would ask the jury to ignore them.   It is now strenuously urged that for this inadvertence of counsel, instantly corrected by both court and counsel, the verdict must be set aside and a new trial awarded.   It was impossible, says counsel, for the court or the state's attorney to expunge from the mind of the jury the effect of the suggestion; that the jury could not forget the fact suggested, and would not ignore its existence in forming its verdict. The standard sought to be erected by counsel by which to test the "fair and impartial trial," to which one accused of crime is

entitled, is too perfect and refined.   It excludes not only appreciable error, but invades the field of metaphysics and invites investigation of subjects with which neither courts nor juries are competent to deal.   Courts must consider juries as bodies of plain men, imbued with an honest desire to perform with fidelity the duty imposed on them of discovering the truth from the evidence submitted to them, in conformity with the instructions as to the law given them by the court.   Until the contrary is made to appear, it must be presumed that a jury performs its duty, and ignores incompetent testimony to which its attention is called by the court.   We do not think the argument of the state's attorney subject to the criticism of counsel that it was an indirect and covert remark upon the failure of the defendant to testify as a witness.

The next assignment of error is upon the action of the court in rejecting certain testimony offered by defendant.   The principal evidence for the state connecting appellant with the murder of Tillman, was the testimony of two of his accomplices, Lee Irvin and Cornelius Robinson.   By them his guilt was thoroughly established, if their testimony was credited by the jury.

It appears that soon after the murder of Tillman suspicion became fixed upon Irvin and Robinson, and on Saturday or Sunday morning (the homicide having occurred on Thursday), they were arrested.   On Sunday morning the body of Tillman was discovered in a stream where it had been sunk by the murderers by attaching large rocks to its head and feet.   After the discovery of the body, violence was used against them to extort a confession against others, and assurances were given Irvin at least that he should be protected if he would divulge all he knew of the crime. On cross-examination of Irvin these facts were elicited, but it appears that neither he nor Robinson made any statements relative to the crime until after they had been removed to the jail at Oxford, Mississippi; the other defendants were in the meantime incarcerated in the jail of Grenada county.   After Irvin and Robinson had testified, C. H. Perry was being examined as a witness, when the defendant's counsel asked him "what, if any, inducements were

offered and extended to Lee Irvin and Cornelius Robinson in order to get them to testify in the case." And, further, counsel for defendant offered to prove by Perry and also by members of the coroner's jury which was investigating the death of James Tillman, that members of the coroner's jury and other prominent citizens, men of means and influence, said to Lee and Cornelius : " We have the dead thing on you ; it will be better for you to tell the truth about the matter, and if you will tell the truth, all you know about it, you shall not be hurt, but we will protect you and will furnish money for you to leave the country when the trial is over." Upon objection by the state, this evidence was excluded and the defendant excepted. We agree with counsel for appellant that it is not always necessary to lay the foundation for evidence attacking the credibility of witnesses, by first inquiring of the witness sought to be attacked whether the discrediting fact exists. It will, however, we think, be found that in all cases in which, without preliminary inquiry from the witness, it is competent to discredit him by evidence of other facts, the other fact itself must, of and by itself, be of a nature to throw discredit upon his testimony. Thus, one may prove that an adversary witness is of bad reputation for truth and veracity ; or that he is unfriendly to the party against whom he testifies ; or is nearly related to his adversary, or has been convicted of crime, or has accepted a bribe to testify. But the fact that some third person has offered a bribe or other inducement, *not accepted* by the witness, does not tend to discredit him. If such were the rule, the most spotless and disinterested witness would be at the mercy of the unscrupulous, without power or opportunity to defend himself from unjust aspersions.

The course of inquiry proposed by counsel for accused was not for the purpose of establishing suspicious circumstances, the existence of which the state's witnesses had denied. Irvin had detailed what had transpired ; had admitted the threats and force used against him, the promises of immunity that had been given on condition of his divulging all he knew of the killing. All of these things had proved unavailing to procure any statement from him,

and it was not until after he and Robinson had been carried to another county, that either made any confession or statement. Robinson had not been interrogated by the defendant touching these matters. It was not proposed to prove that either of the witnesses had at the time of the inducements offered, accepted the same and testified, or promised so to do. The sole purpose was to discredit the witnesses by evidence of proposed, but unaccepted inducements, as to which the witness Irvin had been examined and had freely spoken, and as to which Robinson had not been interrogated. Under these circumstances, the evidence was properly excluded.

The next exception taken was to the action of the court in refusing the 23d instruction asked by the accused and by withdrawing another instruction, which the court had given, touching the duty of the jury to acquit if there was no corroboration of the testimony of the accomplices. The refused instructions pertain to the same subject and will be considered together.

By the 23d instruction the defendant asked the court to tell the jury that: " The act of an accomplice in testifying for the state so as to criminate himself with others is voluntary. He could not be compelled so to do. He testifies for the state under a promise of favor expressed or implied, on condition that he will make a full confession and statement in regard to the matter. His testimony comes in such questionable shape that it should in the interest of truth and justice be subjected to the severest scrutiny, and acted on with the greatest caution." By another instruction, the court had been requested to *advise* the jury not to convict upon the uncorroborated evidence of accomplices. In acting on this instruction, the court struck out the word *advise* and inserted in lieu thereof the word *instruct*. After counsel for the defendant had concluded his argument, the state's attorney moved the court to withdraw this instruction, which was done. Counsel for defendant then asked the court to give it with the word *advise* instead of the word *instruct*, which the court refused to do. By the 5th and 9th instructions given for defendant, the court had told the jury that it was its province to determine what weight should be given to the testimony

of the accomplices, and that it should consider, "all the circumstances in evidence which may tend to disprove the truth of the testimony or to throw suspicion upon it, or to cause its rejection, and also to consider all the circumstances which may explain the motive of the accomplice in testifying falsely, or what might tend to prompt colored or untrue statements from him, and it will be proper for the jury to consider such testimony in connection with any threats made against the accomplice prior to his testifying, or any violence threatened or attempted upon or towards him, or any promises of help or aid or relief made to him, or any intimidation offered against him, or any raising of hopes in any way in his breast, of escape for himself, or any knowledge or apprehension on the part of the accomplice of great feeling or prejudice against the defendant, or any other fact or circumstance naturally calculated to influence the fears or feelings of the accomplice; provided such circumstances or any of them appear in evidence, and the jury may in view of any such circumstances discredit the testimony of said accomplice and wholly reject it, even if such rejection will lead to the acquittal of the defendant."

The suspicion with which the testimony of accomplices is received by the courts, and their unwillingness to sustain convictions resting wholly upon the uncorroborated evidence of such persons has led to the very general practice of advising juries to act with great prudence and suspicion upon such evidence, and to acquit unless there is corroboration in material particulars. But our researches have failed to discover a case in which a conviction has been set aside by reason of the court refusing so to instruct or to advise. In the case of *State* v. *Jones,* 64 Mo. 391, an instruction substantially that of the 23d here was refused by the court, and the supreme court in passing upon the case declared that the instruction "should have been given;" but the judgment was reversed on other grounds, and we do not know that in the absence of other error the refusal of this instruction would have been held reversible error.

In *State* v. *Hany,* 2 Dev. & Bat. 390, the supreme court of North Carolina declared what we understand to be the true rule upon the subject. The practice of giving such instructions or

advice to the jury, it is there said, rests in the discretion of the presiding judge and his refusal .so to do is not assignable as error. " No one," said the court " can require of the judge to give an instruction to the jury, except on the *law* of the case." " The judge may caution them against reposing hasty confidence in the testimony of an accomplice. It is usual—justifiable, and we add it is proper to do so, where he has cause to apprehend that the jury may feel themselves bound to find a verdict conforming to the positive testimony of the witness without weighing the circumstance of suspicion and distrust under which his testimony is rendered. Long usage, sanctioned by deliberate judicial approbation, has given to this ordinary caution a precision which makes it approach to a rule of law. Jurors are advised that it is deemed hard, and that it is unsafe to convict on the testimony of an accomplice, unless that testimony receive material support from evidence, *aliunde*, so coinciding with it in considerable circumstances, as to leave no rational doubt in their minds of its truth. In what parts of the details of the testimony this confirmation should be had, in order to remove the jealousy and suspicion to which the testimony is exposed, and to create such degree of confidence in his general credibility as to command faith in those parts of his narrative where he is not supported, the judge has not the right to advise or direct the jury. Speculative writers have indeed undertaken with much ingenuity to devise rules of faith on the subject, but the law is wholly silent concerning them. Tolerating and approving of the general custom, it trusts the application of the caution under all the circumstances testified, wholly to the intelligence and integrity of the jury."

The learned annotator of the case of *Commonwealth* v. *Price*, 71 Am. Dec. 668, adopts the declaration made in this case, that " long usage sanctioned by deliberate judicial approbation, has given to this ordinary caution a precision which makes it approach to a rule of law. It is questionable, however, if in any case its omission would be ground for a new trial," and in its support cites many cases which will be found in the note to that case.

The remaining assignment of error is upon the giving of an instruction by which the court told the jury it might consider any

threats against the deceased, proved to have been made by the accused, and any motive to kill established by the evidence, together with all the evidence in the case, in making up its verdict.

The instruction is not subject to the criticism that it is upon the weight of the evidence, for it does not tell the jury that such facts prove or tend to prove the issue in favor of the state. Nor does it announce any erroneous proposition of law. On the contrary, by admitting such evidence, the court declared its competency, and it is true that the jury may and should consider all the evidence in forming its verdict. While we do not think the instruction erroneous in the sense of entitling the accused to a new trial, it is much to be hoped that the courts will reject such charges when asked. Counsel representing the state may very properly argue before the jury the effect of such evidence. But the field of argument is so nearly invaded by such instructions that the court may with propriety decline to give them.

We find no error for which the judgment should be reversed, and it is,

*Affirmed.*