## McNEALLY v. STATE.

Practice—Criminal Law—Amendment of Affidavit for Continuance—Accomplice—Instruction—Possession of Stolen Property—Evidence.

1. The defendant in a criminal prosecution applied for continuance on account of the absence of a witness who, it was alleged, would testify that a witness for the State had made statements contradictory to his testimony. The prosecution admitted that, if present, the defendant's absent witness would so testify. Upon the trial the evidence was objected to upon the ground that no foundation had been laid for the absent testimony. Defendant asked leave to amend the affidavit for continuance by fixing therein the time and place of the conversations, and for leave to recall the State's said witness for further cross-examination to lay the proper foundation. Both requests were refused. Held, error; and that the amendment should have been permitted upon the trial, and that the request to recall the witness should have been granted.

2. In a prosecution for cattle killing, the testimony of an accomplice is not corroborated as to the guilt of the accused, by proof that the hide and brands of the animal killed were found by the officers at a place indicated by the accomplice when he first reported the crime.

3. Although there was corroborating testimony, as the instructions did not refer to it, but diverted the attention of the jury to an immaterial matter as strong corroboration, they were therefore erroneous and prejudicial.

4. If corroboration of an accomplice is required (which is not decided), it must tend to confirm his testimony upon a material point, in the sense that it tends to prove the guilt of the accused, but if it appears that the accomplice has testified to the truth in some material particulars, the jury may infer that he has in others.

5. To justify an inference of guilt from the fact of possession of stolen property, it must appear that such possession was personal, and that it involved distinct and conscious assertion of possession by the accused.

[Information filed October 23, 1893—Decided June 6, 1894.]

Error to District Court for Converse County, Hon. Rich-
ard H. Scott, Judge.

Joseph H. McNeally was convicted of the crime of killing
one head of neat cattle. He prosecuted error. The material
facts are stated in the opinion.

*A. C. Campbell* and *R. W. Breckons,* for plaintiff in error.
Continuance should have been granted, notwithstanding
admission of prosecution. (Embry v. Com., 12 S. W., 383;
Brown v. State, 12 S. W., 1101; Ainsworth v. State, 16 S. W.,
652.) Re-direct examination of a witness must be confined
to matters brought out on cross-examination. (Thompson on
Trials, 482; Wharton's Ev., 574; Danl. Ch. Pr., 1104; 34 N.
J. Eq., 60; 58 Md., 291; 75 Wis., 461.) Testimony as to
statements of a witness to show his bias is competent. (Cramp-
ton v. State, 12 S. W., 563; Cheatham v. State, 67 Miss., 335;
131 N. Y., 321; Whitney v. Butts, 16 S. E., 649.) Circum-
stances of finding the hide no corroboration. Com. v. Holmes,
127 Mass., 424; U. S. v. Lancaster, 10 L. R. A., 333; 70 Ia.,
176; 97 N. C., 484; 27 Pac., 477 (N. M.).

*Charles N. Potter,* Attorney General, for the State.
In criminal cases, continuances rest within the sound dis-
cretion of the court. (State v. Hedges, 2 Kan., 26; Burrill
v. State, 25 Neb., 581; Ins. Co. v. Gisborne, 5 Utah, 333;
Hicks v. State, 6 Fla., 441; McKinney v. State, 3 Wyo., 719.)
The testimony of the absent witness embraced in the affidavit
for continuance was properly excluded, as the rule concerning
impeachment by contradictory statements applied. The in-
struction as to corroboration of the accomplice did not con-
fine the jury, alone, to the character of evidence therein
stated.

Groesbeck, Chief Justice.

Joseph H. McNealley, the plaintiff in error, was convicted
in the district court of Converse county of the crime of felon-
iously killing one head of neat cattle of the value of fifteen
dollars of the property of Frank Wolcott and Company, at

the said county, and was sentenced by the trial court to imprisonment in the penitentiary for the period of five years. He brings error to this court and seeks a reversal of the judgment below for numerous grounds of error occurring at the trial, but we need consider but two of the alleged errors presented by the record.

1. Plaintiff in error presented his affidavit for a continuance on the ground of the absence of material witnesses for him. The prosecution, while reserving the right to object to the testimony as set forth in the affidavit on the grounds of incompetency and immateriality, admitted that one of these witnesses, one Albert Denton, if present in court, would swear to the facts stated in the affidavit for continuance, and these were: that Denton was acquainted with one Henry Bierman, one of the witnesses for the prosecution, and that Bierman had told him, Denton, that he, Bierman, had killed a VR cow, the property of Frank Wolcott and Company, and that he would swear it had been killed by Joseph H. Mc-Nealley, the defendant below; that he, Bierman and Mc-Nealley, had had a fuss or row about some calves that they had taken up and kept at McNealley's ranch; that McNealley had made him take them away from there and that he, Bierman, would swear that McNealley had killed the cow and get him, McNealley, in the penitentiary if possible. The court denied the motion for a continuance and proceeded with the trial. No admission seems to have been made as to the testimony imputed to Cox, the other witness mentioned in the affidavit for continuance, and no offer seems to have been made of his statements during the trial. During the progress of the trial while the defense was introducing evidence, the testimony of the witness Denton as detailed in the affidavit for continuance, was offered by the defense, whereupon the State objected to the evidence as immaterial, and further that no foundation had been laid for its introduction as impeaching testimony by questioning Bierman when he was on the stand as to the statements imputed to him in the affidavit. This objection was sustained and an exception was taken by the defendant. Counsel for the defendant then asked leave

to recall the witness Bierman for the purpose of laying the foundation for impeachment, and upon the objection of the prosecution, this request was refused, and defendant excepted. His counsel then asked leave to amend the affidavit for continuance in order to·fix the time and place of the conversation set forth therein between Bierman and Denton, as detailed in the affidavit for continuance; the State objected; the objection was sustained and exception to the ruling of the court was again taken by defendant.

The cause had been tried previously at the same term of court and the jury had failed to agree and were discharged. Three days later, the affidavit for continuance shows defendant was informed by "plaintiff," probably meaning the prosecuting attorney, that the cause would stand for re-trial on the next day, whereupon counsel for defendant announced in open court that he would not be ready for trial unless he could procure the testimony of Denton and Cox, and asked an attachment for Denton who it seems was subpœnaed for the former trial, and such an attachment was issued and the return made that the witness could not be found.

The time and place of the alleged statements of Bierman inculpating himself and exculpating McNealley in the commission of the crime and showing the malice and hostility of the former against the latter in endeavoring to falsely fasten the guilt upon the defendant as charged in this affidavit, should have been laid with particularity, but we think the court should have permitted the amendment offered in this respect during the trial, as the prosecution could not have been surprised by such an amendment. The defect in the affidavit was as apparent at the time the affidavit was offered before the trial, as during the trial, and the record discloses that when the affidavit for continuance was under consideration, "the State by its counsel" admitted "that the witness Albert Denton, named in said affidavit, would testify, if present, to the facts stated in said affidavit, and that so much of said testimony as is material would be the testimony of said witness if present." Upon this admission, the court denied the motion for a continuance, to which ruling of the court

defendant then excepted. It is tolerably clear from the record, then, that the failure in this affidavit for a continuance to state the time and place of the alleged statements of Bierman, was known to the prosecution at the time of the application for a continuance. At any rate it was the duty of the prosecution then to have sought a ruling upon the immateriality of the evidence contained in the affidavit, in order that the affidavit might have been amended before the trial. Having failed to do this, we think the defendant should have been permitted to amend it on the trial, and should have been allowed to recall Bierman for the purpose of cross-examining him upon the statements imputed to him in the affidavit, showing his malice, bias and hostility toward the defendant and that he had made statements out of court contradicting his testimony on the stand. Our statute relating to continuances provides that a motion to postpone a trial of a cause on account of the absence of witnesses, can only be made on affidavit showing the materiality of the evidence expected to be obtained, the exercise of due diligence in obtaining it, etc. If the adverse party thereupon will consent that, on the trial, the witness will testify to the facts stated in the affidavit as true, the trial shall not be postponed for that cause, and in such case, the party against whom such evidence is used shall have the right to impeach the evidence of such absent witness, as in case where the witness is present or his deposition is used. Sec. 3397 Rev. Stat. It seems that under this statute, the orderly method would be to require all objections to the materiality of the testimony set forth in the affidavit to be made at the time the affidavit is before the court. While it doubtless is true that the benign purpose of the statute may be perverted or abused by affording the introduction of testimony manufactured by the party offering it, yet if the adverse party chooses to go to trial by admitting that the witness would testify to the facts mentioned in the affidavit as true, such party should be bound by its admissions.

There may be defects in the affidavit which may escape the attention of the court or counsel. If they afterwards become known, and an offer is made to supply the omissions, the court

ought to permit such an amendment. In the case at bar, taking into consideration the admission of the State, that the witness, if present, would testify to the facts recited in the affidavit for continuance, the offer made on the trial to supply the missing averments as to the time and place of the alleged declarations of Bierman, the witness for the State, and the request to recall such witness, who was, as the record discloses, in the county jail awaiting his trial on another charge, thus being under the control of the court, we think that under these circumstances there was error in the action of the trial court. The alleged evidence of Denton as set forth in the affidavit, showing the hostility, bias and malice of Bierman towards the defendant, if true, would have doubtless had some weight in the minds of the jury, in passing upon the truth or falsity of the evidence of Bierman. If the testimony of Denton, as set forth in the affidavit, had been manufactured, the prosecution would have had an opportunity to impeach it, under the wise provision of the statute regulating continuances, the substance of which has been stated. The learned counsel for plaintiff in error have submitted some authorities for the purpose of showing that the alleged declarations of Bierman to Denton as related in the affidavit could have been introduced as independent testimony, contradicting his evidence and as showing his bias and hostility to the defendant, against whom he testified, without compelling the defendant to interrogate him upon cross-examination, touching such declarations and his animus towards the defendant. Some of these authorities, Crumpton v. State, 52 Ark., 273, and Cheatham v. State, 67 Miss., 335, are not in point. The former case is not applicable and the latter is not decisive of the question. The case of People v. Brooks, 131 N. Y., 325, is more in point, where the court says: "The hostility of a witness towards a party against whom he is called may be proved by any competent evidence. It may be shown by cross-examination of the witness, or witnesses may be called who can swear to facts showing it. There can be no reason for holding that the witness must first be examined as to his hostility, and that then, and not till then, witnesses may be called to con-.

tradict him, because it is not a case where a party against
whom the witness is called is seeking to discredit him by con-
tradicting him.     He is simply seeking to discredit him by
showing his hostility and malice; and as that may be proved by
any competent evidence, we see no reason for holding that he
must first be examined as to his hostility. And such we think
is the drift of the decisions in this State and elsewhere." It
was held in that case that no harm was done to the defendant
as the hostility of the witness was shown by other evidence,
and if the examination of the defendant on this point had
been further prolonged, it could not have added any further
weight to the evidence already given on that subject, and
because the extent to which an examination may go for the
purpose of proving the hostility of the witness must be, to
some extent, at least, within the discretion of the trial judge.
The view of the New York court is not in harmony with the
view of the Court of Appeals in Virginia, laid down some ten
years earlier than the decision in People v. Brooks, that "when
the object is to prove hostile declarations or acts, the witness
must first be cross-examined as to such declarations or acts,
so that he may have an opportunity for explanation," citing
Wharton on Evidence, sec. 556, and 2 Taylor on Evid., sec.
1451.   Langhorne v. Commonwealth, 76 Va., 1019. The rule
as to contradictory statements, is as much involved in doubt.
The view of Mr. Greenleaf and the notes to his text to sections
426-464 of his work on evidence, has received the sanction of
the Supreme Court of the United States, in the case of Ayers
v. Watson, 132 U. S., 405.  It is to the effect that the credit of
a witness may be impeached by proof that he has made state-
ments out of court contrary to what he has testified at the
trial.  He can only be contradicted in such matters as are rele-
vant to the issue, and before this is done, it is generally held
necessary, in the case of verbal statements first to ask him as
to the time, place and person involved in the supposed contra-
diction.   This proceeding is considered indispensable, in a
spirit of fairness to a witness, who is sought to be impeached.
   Mr. Wharton states the object of this rule "is to enable the
witness to recall the incidents, and to explain the inconsisten-

cy if there be such," but he states that in some jurisdictions it is not requisite to ask the witness beforehand as to whether or not he had not stated differently, and in other cases this has been left to the discretion of the court. 1 Wharton's Law of Ev., sec. 555-556.

However, it will not be necessary to pass upon the proper practice or to establish a rule of evidence in such cases, as the court should have permitted the amendment to the affidavit showing the time and place of the alleged declarations of Bierman, and the recalling of the witness Bierman for the purpose of examining him on the matters alleged in the affidavit, after it had been amended.

2. The evidence of the prosecution was mainly that of Bierman, a young man of 21 years of age, who at the time of the alleged commission of the offense, was in the employment of the defendant McNealley, and at the time of the trial was in the county jail upon another charge. He testifies that late on the afternoon of the day alleged in the information as the time of the commission of the crime, he went with Mc-Nealley from the ranch of the latter to the pasture of Wolcott and Company; that they drove a cow with the "VR" brand from said pasture about a mile, when the animal showing fight, she was shot by McNealley, the shots taking effect in the head and shoulder of the animal, and one of them grazing the skin under the eye. After the cow had been killed the animal was skinned, the brands were cut out and the carcass was left until the following morning, when witness and McNealley removed the carcass to the ranch of the latter; the hide having been dragged some distance away from the place of the slaughter of the animal, on the previous day. Bierman states that three-quarters of the animal was salted down by McNealley, and Beach, another witness for the prosecution, testifies that McNealley sent for him, said "We killed last night, and brought the beef in this morning," and told him to take "a quarter of that good 'VR' beef," referring, doubtless, to the brand upon the animal. Beach testified that the shoulder-blade of this quarter was gone. This evidence was the only direct corroborating evidence of that of Bierman. The latter,

while in the county jail, informed the officers of the crime and went with them to the place where the hide was located and where the brands were hidden, the latter place being some fifty or seventy-five yards from McNealley's ranch. The mark of the shot grazing the eye of the animal was discovered on the head, and there were other circumstances showing that Bierman had informed the officers truthfully of the location of the hide and brands of the animal. The defendant in his testimony denied flatly the statements of Bierman; asserted that he knew nothing of the killing; that he had let Beach have a quarter of beef some two months before this time; but none in the month of August. Two of his witnesses swore that they were visiting at his ranch and there was no meat there during their visit, which was during the time of the commission of the offense and sometime after. The court charged the jury relative to the evidence of the accomplice Bierman, as follows:

"If from all the evidence, the jury believe that the witness Henry Bierman was an accomplice of the defendant in the crime charged, they should not convict the defendant upon his testimony alone; if, however, said testimony is corroborated in any material point, either by testimony as to the same act testified to by the witness Henry Bierman, or by proof of other and independent circumstances and facts tending to prove the commission of the crime charged and connecting the defendant therewith, the jury may give the testimony of the witness Henry Bierman full credit and belief. If you should find from the evidence that the witness Henry Bierman, when he first reported the crime to the officers, made certain statements as to where the animal was killed, and the disposition of the hide and brands of the animal killed, and if you should further find that by means of this information, and the assistance of the witness Henry Bierman, the officers were enabled to find the hide and brands of the animal killed and that said hide and brands were found where and as stated by the witness Henry Bierman to the officers, this fact will be a strong corroboration of his testimony."

This instruction was given over the objection of the defend-

ant, and he excepted to the action of the court in so charging the jury. Taken as a whole it is manifestly erroneous. We do not think that the finding of the hide and brands of the animal at the points or places located by Bierman in his statements to the officers and with his assistance is corroborative of, much less a "strong" corroboration of his testimony as to the guilt of the defendant, McNealley. The defendant under oath denied explicitly his knowledge of the crime, and his participation in the killing of the animal. The location of the brands near his residence was not such an exclusive, personal or recent possession of them as to connect him with the crime. To justify the inference of guilt from the fact of possession of stolen property, it must appear that the possession was personal and that it involved distinct and conscious assertion of possession by the accused. See People v. Hurley, 60 Cal., 74, in which case it appears that the hides of the cattle alleged to have been stolen were found in the defendant's barn. The corroboration of Bierman's testimony is to be found in the testimony of Beach, who stated that the defendant, McNealley, gave him a quarter of beef the morning after the date of the slaughter of the cow, as fixed by Bierman in his testimony, with the remark that "we," meaning probably McNealley and Bierman, had killed the night before, that it was good "VR" beef—that is, of the Wolcott and Company brand, and with the circumstance that the shoulder blade which Bierman stated was shot was missing.

We might have refused to disturb the verdict and judgment for this cause if there had been no other evidence in the case, and if the evidence had been clear, positive and uncontradicted as to the guilt of the accused, for the reason that the instruction, however erroneous, would not have misled or influenced the jury, and because they could have arrived at no other conclusion than that of the guilt of the defendant, but as the evidence in the case was conflicting, the defendant denying his guilt, and evidence appearing in his behalf which tended to show his presence at his residence at the time fixed by Bierman as the time of the commission of the crime and tending to show that defendant had no meat in his house after

the time of the alleged killing of the animal, we can not say that the jury were not misled by the objectionable instruction. Where it has been held that evidence to corroborate the evidence of an accomplice is necessary, such corroborating evidence must tend to connect the accused with the crime. Com. v. Holmès, 127 Mass., 424. The corroboration requisite to validate the testimony of an alleged accomplice should be to the person of the accused. Wharton Crim. Ev., Sec. 429. Although the testimony of Beach was a corroboration of Bierman's testimony, as to material matters and tended to connect McNealley with the crime, unfortunately, the attention of the jury was not called to such testimony, but their attention was diverted by the instruction challenged, to the finding of the hide and brands as located by Bierman, wherein they were instructed that such facts were "strong" corroboration of the testimony of the accomplice. While it is not clear that in this jurisdiction a conviction on the unsupported testimony of an accomplice may not be sustained, as there are authorities based upon the strongest of reasoning, that the jury may, if they please, act upon the evidence of an accomplice, notwithstanding the turpitude of his conduct, the general rule would prevail that it is the duty of the court to advise the jury not to convict upon such testimony alone and without corroboration. Such corroboration to be competent and sufficient must tend to confirm the testimony of the accomplice upon a point material to the issue, in the sense that it tends to prove the guilt of the defendant, but if it appears that the accomplice has testified to the truth in some material particulars, the jury may infer that he has in others. U. S. v. Lancaster, 44 Federal, 896. As the court saw fit to give the usual admonition to the jury that they should not convict the defendant upon the testimony of the accomplice alone, the effect of this advice was neutralized by further stating in the instruction that certain testimony adduced was a strong corroboration of the testimony of the accomplice, when it was not even a corroboration, and did not tend to connect the defendant with the crime charged against him. That the accomplice may have told the truth as to the location of the hide

and brands of the animal feloniously killed, and conducted the officers to the spots where they were, does not inculpate Mc-Nealley, the defendant, neither does the fact that they were found on his premises a short distance from his dwelling. We do not care to lay down the strictest rule known, as to the absolute necessity of the presence of testimony corroborating the accomplice in order to warrant a conviction, nor as to the quantum of such confirmatory evidence, as it is not necessary to do so in the determination of questions presented in this case. It is sufficient to say that the true location by the accomplice of the hide and brands of the slaughtered animal was not corroborative of the testimony of the accomplice, with respect to the agency of the defendant in the commission of the crime.

The judgment of the district court of Converse county is reversed and a new trial ordered in conformity with the views herein expressed.

CONAWAY and CLARK, JJ. concur.