## THE STATE v. GREEN.

1. EVIDENCE—CASE DISTINGUISHED.—To permit B. to testify that P. told him that G. told P., after a homicide was committed, that G. had killed C., is error, because hearsay. *State* v. *Workman*, 15 S. C., 540, distinguished.

2. EXPERT EVIDENCE.—A doctor may say that, in his opinion, based on reading standard medical works, strychnine is a deadly poison.

3. WITNESS.—Is it error to allow a clerk of court to remain in the court room when witnesses are excluded by order of the court, when his testimony in the case is upon a collateral fact?

4. EVIDENCE—DISCRETION.—Questions as to the relevancy of testimony and leading questions are so much in the discretion of the Circuit Judge, that this Court does not feel at liberty to interfere, unless it appear that the appellant has been injured thereby.

5. WITNESS—SELLING CROP UNDER LIEN.—A party is not disqualified as a witness because he has been convicted of selling crop under lien.

6. EVIDENCE—CONFESSION.—To permit B. to testify that C. told him, after the homicide, that G. told C. what to testify before the coroner, is error, because hearsay, and no part of the confession of C.

7. SOLICITOR—NEW TRIAL.—The language used by counsel for the State, construed not to contain an allusion to the fact that defendant did not testify.

8. CHARGE.—May a Circuit Judge say to the jury: "If this be true, gentlemen, this crime, in its sickening and horrible details, is without parallel in the history of crime in this State, and could be equalled only in the annals of some barbarous age?"

9. CONVICTION—EVIDENCE OF ACCOMPLICE—ACCOMPLICE.—The jury may convict on the uncorroborated evidence of an accomplice.

10. CHARGE.—When the Circuit Judge says in his charge, "If she is telling the truth, then all of the defendants are guilty," he draws an inference for the jury, and is in error.

Before EARLE, J., Spartanburg, October term, 1895. Reversed.

The defendants, Edward D. Green, Fannie Carson, and John L. Page, were convicted of killing J. O. Carson.

From this judgment the defendant, Edward D. Green, appeals on the following exceptions:

Because the Circuit Judge erred in allowing the witness,

William Blackwell, on the cross-examination of counsel for the defendant, Page, to testify as follows: "Q. How far were you from them when you saw them talking? A. They were some twenty or thirty steps; not more than that. Q. They did not seem to be talking any secret? A. They were rather squatted down, as well as I remember, talking a little; I could only see the movement of their mouths, I did not hear them; I suppose they had been talking."

Because the Circuit Judge erred in allowing the witness, William Blackwell, during the examination of said witness by counsel for the defendant, John L. Page, to testify as follows: "He said (meaning Page) he stayed all night there that night, and said that Mr. Green went off; said he had to go off a little piece, and he said: "You stay here until I come back." He says, "I don't know what about that, Ed. and you gone." He says, "You stay, and I will give you $20;" and he says, "I don't know hardly about that, and you gone." He says, "As far as that is concerned, I could stay without anything, if you want me to stay that bad," or something to that amount; and he said that Green went, and said when he got back he was asleep lying in bed, and he said he woke up; Mr. Green was in the house and spoke to him, and he says: "Well, he says, John, I have killed Ban Carson," and he says: "I will give you $100 to swear that I was here all night, and if you don't swear that," he says, "me and Mrs. Carson will both swear that you were there and hope us."

Because the Circuit Judge erred in permitting the witness, H. E. McDowell, to testify that he "had read in standard works on medicine" that strychnine is a deadly poison.

Because the Circuit Judge erred in allowing the witness, T. R. Trimmier, to testify. The Court having ordered, on motion of defendant's counsel, that the witnesses be separated and excluded from the court room during the examination of the witnesses in the trial, and the said T. R. Trimmier was not so excluded, and heard the examination of the other witnesses.

Because the Circuit Judge erred in allowing the witness, Adam W. Ballenger, to testify as follows: "Q. What I want to know is, what kind of a place is it (referring to plantation of deceased), was it a good, bad or indifferent? A. Well, from what I could see, it appeared to me that it was a pretty fair place;" the same being incompetent, irrelevant, and absolutely foreign to the issue.

Because the Circuit Judge erred in allowing the witness, Austin Lee, to testify, and in allowing his testimony to go to the jury, when the said witness admitted that he had been tried and convicted of disposing of crop under lien; which, it is submitted, is an infamous offense, and his testimony should not be received in a court of justice.

Because the Circuit Judge erred in allowing the witness, Adam W. Ballenger, when recalled by the State, to testify as follows: "Q. Is there anything you omitted to state in your testimony this morning that you wish to state now? A. One thing. Mrs. Carson told me that Mr. Green told her what to testify to, told her what to swear, what to testify to at the day of the trial up there. She told me the other day that Mr. Green told her what to swear when she went before the squire." The same being an attempt to convict Green on statements alleged to have been made to the witness by Mrs. Carson, and tended to poison the minds of the jurors against Green, and that the Circuit Judge erred in not striking out said testimony.

Because his Honor, the Circuit Judge, erred in admitting the testimony of the witness, L. M. Blackwell, as follows: "Q. Did you ever see the defendant, Green, at Mrs. Carson's? A. Yes, sir." The same being incompetent, irrelevant, and leading.

Because counsel for the State (Mr. Duncan) was allowed, during his argument to the jury, to use the following language: "The argument of counsel (Mr. Thompson) who preceded me amounts to this: Wipe out all the testimony for the State, and you have no case against my client. What does he propose to knock it out with? Does he propose to

knock it out with argument of counsel, or by testimony adduced on the part of the defense?" The purpose being to call the attention of the jury to the fact that the defendant, E. D. Green, did not testify in the trial of said case.

Because counsel for State (Mr. Duncan), during his argument to the jury, was allowed to say, speaking of the defendant, Green: "He sat there during this trial and munched an apple like a gorilla." And that said counsel (Mr. Duncan) denounced the said Green in strong and violent language, and called him a "murderer," "villain," "slanderer."

Because counsel for the State (Mr. Duncan), in the course of his argument to the jury, was allowed to say, speaking to and pointing his finger towards the defendant, Green: "Come forth, thou slanderer, and make thy boasting good." The same being in violation of the rights of said defendant, and prejudicing his case in the minds of the jury.

Because his Honor, the Circuit Judge, erred in charging the jury as follows: "The State charges that one of these defendants was his wife, and that she conspired with the other defendants to kill and murder her husband, the father of her two little children. That at the appointed hour on the fatal night, the cruel wife left her husband's chamber, after assuring herself that he was asleep, and met her co-conspirators as it had been planned by all of them, and permitted them to enter that chamber, with the settled purpose to kill and murder her unsuspecting husband. If this be true, gentlemen, this crime, in its sickening and horrible details, is without parallel in the history of crime in this State, and could be equalled only in the annals of some barbarous age. But let me warn you here that you must not let the righteous indignation that the recital of the details of such a crime may have aroused in your breasts to influence your judgment in this case." The same being a strong expression of opinion of the offense charged, and misleading, as the indictment only charged the defendants with the murder of the deceased, Carson, and did not set out any of the details as contained in the above charge.

Because the Judge erred in charging the jury as follows: "Now, this woman, if you believe her testimony, was an accomplice to the commission of this horrible crime, and it is my duty to say to you, that while under the law you may convict all of the defendants upon her unsupported testimony, yet it is not safe to convict her codefendants upon her testimony, unless it is corroborated in some material particulars by other independent facts and circumstances. The confirmatory evidence must, in some degree at least, tend to connect other defendants with the commission of the murder and to show their participation in it, and not merely tending to show that some one committed the crime, or merely tending to prove the existence of ·some of the attendant circumstances; but, at the same time, you have power to convict upon the testimony of an accomplice without corroboration. If you believe the testimony of the defendant, Fannie Carson, you have the power to convict all of the defendants without corroboration; but it is my duty to say to say to you, that it is often laid down in the law books that it is not ·safe to convict upon the testimony of an accomplice without. corroboration." The latter part of which charge was misleading, and should have stated that it is not only "often laid down in the law books that it is not safe to convict upon the testimony of an accomplice without corroboration," but that such is the law of South Carolina.

*Messrs. Mooney & Earle, W. W. Thompson,* and *J. P. Cary,* for appellant, cite: *Evidence improperly admitted:* 36 S. C., 524; 15 S. C., 445. *Comments of State's counsel:* 149 U. S., 60; 102 Ill., 261; 123 Mass., 239; 32 Tex. Crim. Ap., 136; 24 S. W. Rep., 414; 35 S. C., 197; 110 Mo., 350; 95 Mo., 652; 27 S. W. Rep., 1109; 101 Ind., 85; 65 N. C., 505; 85 N. C., 576. *Charge:* 28 S. C., *State* v. *Addy,* 32 S. C., 54.

*Mr. Solicitor Schumpert* and *Messrs. Duncan & Sanders,* contra.

Jan. 6, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The appellant was indicted, jointly with Fannie Carson and John L. Page, for the murder of J. O. Carson, called in the testimony Ban Carson, and the parties were tried jointly in the Court of General Sessions for Spartanburg County, at October term, 1895. The jury rendered a verdict of guilty against Edward D. Green, and the other two defendants were found guilty, with a recommendation to mercy. In accordance with this verdict, the defendants, Fannie Carson and John L. Page, were sentenced to imprisonment for life in the state penitentiary, and the defendant, Edward D. Green, was sentenced to be hanged on the 28th December, 1895. Edward D. Green alone appeals, and upon service of his notice of appeal the Circuit Judge made an order suspending the execution of his sentence pending the appeal. The grounds upon which this appeal is based are fully set out in the record, but they are too long for insertion here, though they should be incorporated by the Reporter in his report of the case.

These grounds, though not numbered in the record, have been numbered by us for convenience of reference, and raise three general questions: 1st. Whether there was error on the part of the Circuit Judge in his rulings as to the admissibility of certain testimony. 2d. Whether there was error in permitting counsel for the State to indulge in certain remarks in his argument before the jury, deemed prejudicial to the defendant. 3d. Whether there was error in the Judge's charge to the jury.

The specifications of error upon which the first ground of appeal is based is in allowing the witness, Wm. Blackwell, to narrate a conversation he had with defendant, Page, after the homicide had been committed, in which Page, while not confessing his participation in committing the crime, undertook to state what the appellant, Green, had said to him on the night the homicide was committed, upon his return from the house of the

deceased, where the fatal deed had been done; for the statement of Page, as detailed by Blackwell, was in substance and effect as follows: That Page, at the invitation and urgent request of Green, spent the night when Carson was killed, at the house of Green; that Green left the house, saying, "he had to go off a little piece," and urged Page to remain until he came back; that Page went to sleep and did not wake up until after Green's return, when Green told him, "Well," he says, "John, I have killed Ban Carson," and he added, "I will give you $100 to swear that I was here all night, and if you don't swear that, me and Mrs. Carson will both swear that you were there and hope us." Now, this was manifestly anything but a confession on the part of Page, and was designed to relieve himself of any imputation by showing that he was at Green's house on the night of the homicide, and had nothing to do with it, and the effect of it was to show by purely hearsay testimony that the accused had admitted his guilt to a person who was not offered as a witness to prove such admission. It was, practically, permitting A to prove that B told him that C had admitted his guilt to him, B. This is not like the case of the *State* v. *Workman*, 15 S. C., 540, where it was held that a confession made by one of several persons accused of crime may be proved by the person to whom the confession was made, even though the confession implicated others, though the jury, in such a case, must be instructed that the confession must not be regarded as evidence against such others, but only as evidence against the person who made the confession; for in this case Page made no confession of his own guilt, but simply stated to Wm. Blackwell what he had heard Green say as to his own guilt, after the homicide had been committed. Blackwell's testimony, therefore, was purely hearsay, and, therefore, incompetent, as was held in *State* v. *Carson*, 36 S. C., 524.

The second ground of appeal imputes error to the Circuit Judge in allowing Dr. McDowell to testify that, in his opinion, based upon his reading of standard medical

works, strychnine is a deadly poison, cannot be sustained.  See *State* v. *Terrell*, 12 Rich., 321:

The third ground of appeal must likewise be overruled. The testimony there objected to was stricken out, and hence no harm resulted to appellant.  But we must not be understood as holding that, where witnesses are excluded from the court room during the development of the testimony, this would render the testimony of the clerk of the court, whose duty required him to remain in court, as to such fact as Trimmier was called to testify, incompetent; for, as the testimony was stricken out upon another ground, it is not necessary now to express any opinion upon the point which might otherwise have been raised.

The fourth and seventh grounds of appeal being of a kindred character will be considered together.  They both rest upon the ground that the Circuit Judge erred in receiving the testimony therein referred to because it was irrelevant and leading.  In the first place, as all the testimony in the case is not before us, we are not in a condition to enable us to determine satisfactorily whether such testimony was irrelevant; and in the second place, questions of the relevancy of testimony and as to leading questions are so much in the discretion of the judge presiding at the trial, that this Court does not usually feel at liberty to interfere with the exercise of such discretion, unless it is made to appear that the appellant has thereby been prejudiced. This has not been made to appear in this case—indeed, these grounds were not relied upon in the argument here, but as they were not expressly abandoned, we have felt bound to notice them.  These grounds must be overruled.

The fifth ground imputes error to the Circuit Judge in permitting the witness, Austin Lee, to testify after he had admitted that he had been convicted of disposing of his crop while under a lien.  The offense of which this witness had been convicted has not been made a felony nor does it belong to the class known as *crimen*

*falsi*, and, therefore, there was no error in ruling that the witness·was competent.

The sixth ground of appeal raises very much the same question as that presented by the second ground, which has already been considered. It seems that the witness, Adam W. Ballenger, had been examined in the morning to prove certain confessions of the defendant, Fannie Carson, and at a subsequent stage of the trial he was recalled for the purpose of proving a conversation between her and the appellant, Green, after the homicide had been committed, in which the witness was permitted to state that Mrs. Carson told him that Green had told her what to swear before the magistrate or before the coroner's inquest. This was clearly hearsay testimony, and, therefore, incompetent. Is was no part of the confession of Mrs. Carson, and had no connection with it, and hence should have been stricken out on the motion of counsel for appellant.

The eighth, ninth, and tenth grounds of appeal all impute error to the Circuit Judge in allowing the assistant counsel for the State to use certain language, therein specified, in his argument before the jury, in which it is claimed that counsel commented on the fact that the appellant, Green, did not testify in the trial of the case. We do not so understand the language attributed to the counsel. On the contrary, the language upon which these grounds are based seem to us to be merely denunciatory of the appellant, Green, and, so far as we can see, contained no allusion to the fact that Green had not testified on the trial. It does not appear from the "Case," as prepared for argument here, that the Circuit Judge either made or was requested to make any ruling as to the propriety of the language used by the counsel for the State, or that any attempt was made, at the time, to check counsel in the use of such language. We do not see, therefore, that these grounds present any question of law upon which this Court can make any definite ruling. Indeed, as was said in *State* v. *Robertson*, 26 S. C., at page 118, and quoted with ap-

proval in *State* v. *Turner*, 36 S. C., at page 541: "It is often matter of difficulty to draw the line sharply between legiti-- mate argument and unauthorized statement—between what is and what is not allowable—and as this pertains to the conduct of the cause, it must, to a large extent, be left to the wise discretion of the Circuit Judge." Neither of these three grounds can be sustained.

The eleventh ground of appeal imputes error to the Circuit Judge in using certain language, in his charge to the jury, which, it is claimed, was a strong expression of his opinion as to the offense charged. It will be observed, however, that the Judge, in using the language complained of, was not expressing his own opinion, but simply reciting to the jury the theory of the counsel for the State as to the circumstances and character of the offense charged, and saying to them: "If this be true, gentlemen, this crime, in its sickening and horrible details, [is] without parallel in the history of crime in this State, and could be equalled only in the annals of some barbarous age." But this strong language was followed immediately by this caution: "But let me warn you here that you must not let the righteous indignation that the recital of the details of such a crime may have aroused in your breasts influence your judgment in this case." We do not see that the Circuit Judge, in using such language, expressed or even intimated any opinion as to any material issue in the case. Here there was not, and could not be, any controversy as to the character of the homicide, and the only controversy was as to whether the parties charged committed the homicide, and that question could not be affected by any remarks as to the degree or nature of the crime. This case, therefore, differs widely from the case of *The State* v. *White*, 15 S. C., 381, where there was no question as to whether the prisoner had committed the homicide, and the only question was as to the degree or nature of the homicide; and hence it was held that the Circuit Judge erred in saying to the jury, in that case, "that

10—48

no doubt a cruel, brutal, and savage homicide had been committed," because that was expressing to the jury, in the most decided terms, the opinion of the Circuit Judge as to the most material issue in the case. The eleventh ground of appeal must, therefore, be overruled.

The twelfth ground of appeal imputes error to the Circuit Judge in his instructions to the jury as to the force and effect of the testimony of an accomplice. It appears that the defendant, Fannie Carson, was examined as a witness, and her testimony implicated herself in the crime charged, and the Circuit Judge instructed the jury that, if her testimony was to be credited, she was an accomplice, and that while, under the law, the jury might convict all of the defendants upon her unsupported testimony, "yet it is not safe to convict her codefendant upon her testimony, unless it is corroborated in some material particulars by other independent facts and circumstances." Again, he said to the jury: "If you believe the testimony of the defendant, Fannie Carson, you have the power to convict all of the defendants without corroboration; but it is my duty to say to you that it is often laid down in the law books that it is not safe to convict upon the testimony of an accomplice without corroboration." Particular exception seems to be taken to the use of the word "often" in the foregoing sentence, the claim being that, under the law of South Carolina, a person cannot be convicted on the uncorroborated testimony of an accomplice. We do not understand that this is now, or ever was, the law of this State. In the case of the *State* v. *Brown*, 3 Strob., 508, it was held that the testimony of an accomplice is altogether for the jury, and, if believed, the jury may convict, even where his testimony is not corroborated; and the English cases there cited fully sustain that doctrine. So in the case of the *State* v. *Wingo*, decided in 1867, and reported in a note in 11 S. C., at page 275, it was held that where the jury convicted a person upon the uncorroborated testimony of an accomplice, the verdict could not be said

to be illegal, though in that case a new trial was granted on consideration of all the facts in the case, as the Court of Appeals then had the power to do. All the authorities show that the testimony of an accomplice is *competent* (*State* v. *Scott*, 15 S. C., 437), and as the jury are the exclusive judges of the facts—especially of the creditability of the witnesses—it is impossible to see why a jury may not convict upon the uncorroborated testimony of an accomplice, provided they believe his testimony. It is true, that it has long been the practice for the Circuit Judge to advise the jury that it is not safe to convict upon the uncorroborated testimony of an accomplice, but this is not a rule of law, but simply a matter of practice, resting in the discretion of the presiding Judge, and accordingly it was held in the case of *Cheathan* v. *State*, 67 Miss., 335, reported also in 19 Am. St. Rep., 310, that where the trial Judge refused to so advise the jury, such refusal constituted no sufficient ground for reversing the judgment. See, also, *Commonwealth* v. *Holmes*, 127 Mass., 424, reported also in 34 Am. Rep., 391, where this subject is fully and elaborately considered. Indeed, since the stringent provisions of the Constitution of 1868, forbidding a Circuit Judge from charging a jury with respect to matters of fact, and the still more stringent provision of the present Constitution upon the same subject, it is difficult to understand how a Circuit Judge is authorized to give any advice to a jury as to the force and effect of the testimony of an accomplice. But, be this as it may, the Circuit Judge in this case did say to the jury, in accordance with the well settled former practice, that it is not safe to convict on the uncorroborated testimony of an accomplice; and hence, if there was any error at all, it was in favor of the appellant, and furnished no reason for sustaining the twelfth ground, which must be overruled.

The only remaining ground, though not taken at the proper time, may, in a case of this character, be considered under the authority of *State* v. *McNinch*, 12 S. C.,

89, approved and followed in *State* v. *Washington*, 13 S. C., 455. In this ground it is claimed that the Circuit Judge erred in charging on the facts, in violation of the provision of the Constitution of 1868 forbidding such a charge. The specification upon which this charge of error rests is, that the Circuit Judge, in speaking of the testimony of Mrs. Carson, used this language: "If she is telling the truth, then all of the defendants are guilty." Inasmuch as it appears from the testimony of Mrs. Carson, which is set out in full in the "Case," that she did not claim to have seen either of her codefendants strike the fatal blow, and, on the contrary, that she was out of the house where the homicide was committed, and merely stated facts and circumstances tending to show that her co-defendants were the persons who actually committed the homicide, it seems to us that her testimony only showed facts and circumstances from which the guilty participation of the other two defendants might well be inferred; but it was for the jury exclusively to draw the inference from such facts and circumstances; and when the Judge said that if they believed her testimony, then all of the defendants are guilty, he practically drew the inference for the jury, and, in effect, instructed the jury that the proper inference to be drawn from the facts and circumstances testified to by her was that the other two defendants were guilty. This, it seems to us, was stepping beyond the line marked out by the Constitution, and was, therefore, error.

The judgment of this Court is, that the judgment of the Circuit Court, as to the appellant, Edward D. Green, be reversed, and that the case, as to him, be remanded to the Circuit Court for a new trial.

MESSRS. JUSTICES POPE, GARY, and JONES. We concur, but, out of abundance of caution, we desire to say, that we are not now prepared to approve of the view taken of the eleventh exception.